UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 07-101-GWU

REDA BARTLEY,                                          PLAINTIFF,

VS.                      **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,              DEFENDANT.

## INTRODUCTION

Reda Bartley brought this action to obtain judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits (DIB). The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

07-101  Bartley

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.   <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?   If yes, the claimant was not disabled.   If no, proceed to Step 7.   <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

        Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

07-101  Bartley

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. Section 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the

3

> alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

07-101  Bartley

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

07-101  Bartley

accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v.
Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that Bartley, a 48 year-old
former school secretary with a high school education, suffered from impairments
related to chronic pain of the neck and back, carpal tunnel syndrome, depression,
and anxiety.  (Tr. 17, 26-27).  While the plaintiff was found to be unable to return to
her past relevant work, the ALJ determined that she retained the residual functional
capacity to perform a restricted range of light level work.  (Tr. 22).  Since the
available work was found to constitute a significant number of jobs in the national
economy, the claimant could not be considered totally disabled.  (Tr. 27-28).  The
ALJ based this decision, in large part, upon the testimony of a vocational expert.
(Tr. 27).

After review of the evidence presented, the undersigned concludes that the
administrative decision is not supported by substantial evidence.  The ALJ erred in
evaluating Bartley's mental status.  However, the current record also does not
mandate an immediate award of DIB.  Therefore, the court must grant the plaintiff's
summary judgment motion, in so far as it seeks a remand of the action for further
consideration, and deny that of the defendant.

The hypothetical question presented to Vocational Expert Gina Baldwin
included an exertional limitation to light level work restricted from a full range by

7

weak grip strength and such mental factors as a limitation to low stress work in a non-public environment.  (Tr. 290-291).  In response, the witness identified a significant number of jobs.  (Tr. 291).  However, review of the record suggests the existence of more severe mental limitations than those presented by the ALJ to Baldwin.  Thus, the hypothetical question was not sufficient to meet the Commissioner's burden of showing other work in the economy was available to Bartley as required by Varley.

In assessing Bartley's mental limitations, the ALJ purported to rely upon the opinions of Psychologists Ann Demaree and Lea Perritt, the non-examining medical reviewers.  (Tr. 22).  However, each of the reviewers identified numerous mental restrictions which were not presented in the hypothetical question, including a "moderate" limitation of ability in such areas as (1) performing activities within a schedule, maintaining regular attendance, and being punctual within ordinary tolerances; (2) sustaining ordinary routine without special supervision; (3) completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable length and number of rest periods; (4) accepting instructions and responding appropriately to criticism from supervisors; (5) responding appropriately to changes in the work setting; and (6) setting realistic goals or making plans independently of others.  (Tr. 139-140, 163-164).  The ALJ provided no reasons why these extensive mental restrictions were rejected.  (Tr. 15-28).

07-101  Bartley

        The aforementioned mental factors were contained in Section I of the Mental

Residual Functional Capacity Forms completed by Demaree and Perritt.  (Tr. 139,

163).  The mental factors actually presented by the ALJ were contained in Section

III of the forms.  (Tr. 141, 165).  The defendant asserts that the residual functional

capacity assessments indicated by the reviewers were only contained in Section III,

entitled "Functional Capacity Assessment," and that the notions of Section I, entitled

"Summary Conclusions," were merely a "worksheet" and not part of the actual

residual functional capacity assessment.   The defendant cites the Program

Operations Manual Systems (POMS) for this proposition which is indicated in the

POMS at Section DI 24510.060B4.  Thus, the defendant asserts that the ALJ was

free to ignore the Section I restrictions.

        The court must reject the defendant's argument.  The POMS is a policy and

procedural manual for Social Security Administration employees to aid in the

interpretation of federal regulations.  Ramey v. Rizzuto, 72 F.Supp. 1202, 1212 (D.

Colo. 1999).  The POMS, while it can be considered persuasive authority by courts,

does not have the force of law.  Davis v. Secretary of Health and Human Services,

867 F.2d 336, 340 (6th Cir. 1989).  In the present action, the interpretation insisted

upon by the defendant is contradicted by the definitions contained on the Mental

Residual Functional Capacity Form itself.  Section I states that:

        This section is for the recording of summary conclusions derived from
        the evidence in the file.  Each mental activity is to be evaluated with
        the context of the individual's capacity to sustain that activity over a

9

normal workday and workweek, on an ongoing basis.  <u>Detailed
explanation of the degree of limitation for each category (A through
D), as well as any other assessment you deem appropriate, is to be
recorded in Section III</u> (Functional Capacity Assessment.

(Tr. 139, 163) (emphasis added).  Section III states:

> <u>Record in this section the elaborations on the proceeding capacities</u>.
> Complete this section ONLY after the SUMMARY CONCLUSIONS
> section has been completed.  Explain your summary conclusions in
> narrative form.  Include any information which clarifies the limitation
> or function.  Be especially careful to explain conclusions that differ
> from those of treating medical sources or from the individual's
> allegations.

(Tr. 141, 165) (emphasis added).  Thus, the form itself suggests that Section I

contains the identified functional restrictions while Section III is intended for further

explanation and clarification.  The two sections work together and Section I is not

a meaningless worksheet.  Thus, since the definitions contained on the document

itself contradict the POMS, the undersigned does not find the POMS to be

persuasive authority on this issue.

Dr. Jay Narola, of Psychiatric Centers, Inc. and a treating physician, was the

only mental health professional to examine Bartley.  Dr. Narola did not address the

issue of specific mental limitations.  (Tr. 211-222, 234-241).  In November of 2003,

the doctor diagnosed the plaintiff with a major depressive disorder and possible

post-traumatic stress disorder.   (Tr. 222).   The claimant's <u>current</u> Global

Assessment of Functioning (GAF) was rated at 50 to 60.  (Tr. 222)  Such a GAF

suggests the existence of "moderate to serious" psychological symptoms according

07-101  Bartley

to the American Psychiatric Association's <u>Diagnostic and Statistical Manual of</u> <u>Mental Disorders</u> (4th Ed.--Text Revision), p. 34.  Such a GAF would be compatible with the findings noted by the reviewers in both Section I and Section III.  While the claimant's past year GAF was rated at 70 to 75, suggesting only "slight to mild" psychological impairment, the court notes that this past year period looks back to a time frame in which Bartley does not claim to have been disabled, since her disability onset date was December 19, 2003.  (Tr. 48).  Therefore, the opinion of Dr. Narola does not support the administrative decision.

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration. Therefore, the court must grant the plaintiff's summary judgment motion and deny that of the defendant.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 29th day of February, 2008.



**Signed By:**

<u>**G. Wix Unthank**</u>

**United States Senior Judge**